IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

WARREN OLIVER,

    Plaintiff,

v.                                                          CASE NO. 5:13-cv-209-WS-GRJ

ADAMS, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This case is presently before the Court on Defendants' Motion for Summary Judgment. (Doc. 116.) Plaintiff has filed a response in opposition to the motion (Doc. 143) and, with the Court's permission, Plaintiff also has filed a supplement to his response. (Doc. 148.) This matter is, therefore, ripe for review. For the reasons that follow, the undersigned recommends that Defendants' motion for summary judgment be granted.

## I. BACKGROUND

Taking the evidence in the light most favorable to Plaintiff, as the Court is required to do, the material facts are as follows. Plaintiff states that on February 11, 2012, Sergeant Cass harassed him by coming to his cell and calling him a "nigger." Plaintiff alleges that Cass told him that he would spray him with chemical agents on February 12, 13, and 14.[1]

---

[1]In the Complaint, Plaintiff lists these dates as "2-12-13, 2-13-12, and 2-14-13." (Doc. 11 at 7.) Based on the date of the incident at issue, however, it seems as though

Plaintiff claims that he subsequently submitted a grievance about Sergeant Cass's threats.  On February 14, Sergeant Cass told Plaintiff that "we are in a club, so nothing is going to be done about this issue," regarding the Plaintiff's grievance. Plaintiff claims that Officer Hadley falsified a disciplinary report charging that Plaintiff tore his blanket and Sergeant Cass and Captain Silcox used chemical agents on him for no reason..

Plaintiff further alleges that after Cass and Silcox used chemical agents on him, they placed him back in the same cell, now contaminated with chemical agents. Plaintiff states that during his post use-of-force examination, he told Nurse A. McDowell that "my ankle is hurting, my eyes and I can't breath[e] sometimes."

Plaintiff claims that Warden Culpepper and Assistant Warden Barfield encourage officers to use excessive force on inmates. Plaintiff states that Colonel Johnson told Plaintiff that he would spray him again with chemical agents if he submits any more grievances on "those issues," and will make his life a living hell.

Plaintiff claims that he declared a psych emergency on February 14, 2012, but the officers kept intimidating him "of going to the psych cell."  He claims that Defendants Adams, Moore, Hadley, Cass, and Silcox kept retaliating against him and harassing him, and they refused to let him attend the disciplinary hearing for the disciplinary report written by Officer Hadley.  He claims that Moore and Hadley kept trashing his cell and playing with his food.

Plaintiff claims a violation of the Eighth Amendment's prohibition on cruel and

---

Plaintiff is complaining about three consecutive days in February of 2012.

unusual punishment, stating that the Defendants were deliberately indifferent to the substantial risk of serious harm and to Plaintiff's mental health needs. He claims that Defendants have violated the First Amendment by retaliating against him. Plaintiff also claims a violation of the Freedom of Access to Clinic Act ("FACE"); 18 U.S.C. § 248.

He requests monetary damages, punitive damages, and injunctive relief against each Defendant, along with any additional relief deemed proper by the Court. He requests that the Court enjoin Defendants from using excessive force against inmates, from covering up abuses, and from retaliating for reporting the issues of abuse. Plaintiff requests that the Court require Defendants to allow inmates to enter the clinic for mental health issues and medical issues. He requests to not be around any of the Defendants. (Doc. 11 at 7-11.)

## II. SUMMARY JUDGMENT MOTION AND EVIDENCE

In support of the motion for summary judgment, Defendants have submitted the following exhibits: the declaration of Officer Brian Cass and his incident report; the declaration of Captain Silcox; the declaration of Warden Culpepper, with attached authorization for use of force and Warden's Summary form; the declaration of Officer Christopher Deese and his incident report; the declaration of Assistant Warden Barfield and Warden's Summary form; Plaintiff's medical records; the charging disciplinary report; the declaration of Shirley Johnson with attached grievance log and copies of grievance appeals; and the declarations of Alan McManus and Lori Sodrel. Defendants argue that there is no dispute as to any material fact and that they are entitled to summary judgment on all claims.

Defendants' version of events is as follows. On February 14, 2012, Officer Hadley counseled with Plaintiff about his bed at 8:15 a.m., to which Plaintiff replied disrespectfully and began beating on his cell door. (Doc. 129-2 at 1-2, 4-5) Sergeant Cass ordered Plaintiff to stop, but Plaintiff shouted profanity and continued beating on his cell. (Doc. 129-2 at 1-2.)

Sergeant Cass and Officer Hadley saw Plaintiff rip his state issued blanket, so Officer Hadley wrote Plaintiff a disciplinary report. (Doc. 129-2 at 2.) Plaintiff was subsequently placed on property restriction around 9:00 a.m. *Id.* He cursed at the staff removing his property and refused orders to stop. *Id.*

Plaintiff continued his disruptive behavior through 10:00 a.m. (Doc. 129-2 at 2, 4-6; Doc. 129-3 at 1.) Captain Silcox determined that, in light of Plaintiff's continuous disruptive behavior for nearly two hours, chemical agents were needed to stop the disturbance. (Doc. 129-3 at 1-3, Doc. 129-2 at 4-6.) Warden Culpepper authorized the use of chemical agents. (Doc. 129-4 at 1-2, 3-4.)

At 10:41 a.m., Captain Silcox stated on camera that his intent was to resolve the incident through counseling, but he had made clear that chemical agents would be used if necessary. (Doc. 129-2 at 2, 5; Doc. 129-3 at 2.) Captain Silcox gave a final order to Plaintiff to stop his disruptive behavior, and Plaintiff complied around 10:44 a.m. *Id.* However, at about 12:25 p.m., Plaintiff started shouting profanities and began beating on the cell door. *Id.* Captain Silcox arrived at the cell around 12:54 p.m. *Id.* Sergeant Cass administered three one-second bursts of chemical agents into Plaintiff's cell. *Id.* Plaintiff, however, continued to shout profanities. *Id.* At 1:03 p.m., Cass again

administered three one-second bursts of chemical agents into his cell. (Doc. 129-2 at 3; Doc. 129-3 at 2.) At about 1:19 p.m., Plaintiff stopped being disruptive.

After the use of chemical agents, Officer Adams took Plaintiff to a cool water decontamination shower, issued him clean clothes and took him to medical for an examination. (Doc. 129-2 at 3, 4-6, Doc. 129-3 at 2.) Medical found no injuries. (Doc. 129-2 at 3, 4-6, Doc. 129-7 at 2.) Plaintiff was placed in a clean cell where chemical agents had not been dispensed. (Doc. 129-2 at 3, 4-6, Doc. 129-3 at 2.) Officer Deese observed Plaintiff for the next hour for signs of respiratory distress, of which he found none. (Doc. 129-5 at 1-2.)

Plaintiff has submitted a seventeen page typed response, along with several exhibits, including sworn declarations from himself and inmates Jason Kroesen, Robert Granata, Willie Boddie, Alex Mascaro, James Queen, Emilio Flores, and Christopher Jean-Marie, interrogatories by Defendant Culpepper and Defendant Barfield, news articles, the sections of the Florida Administrative Code regarding use of force, video recording of use of force, mental health emergency, and medical records, and filings from this case.

Plaintiff responds that there is no evidence that Plaintiff ripped his blanket. (Doc. 143 at 2.) Plaintiff states that Defendants threatened him, placed him on property restriction, and used excessive force on him. (Doc. 143 at 4.) He states that they used chemical agents on him while he was only wearing his boxers. *Id.* He claims that Sergeant Cass threatened Plaintiff and called him "nigger."

Plaintiff claims that the wardens and colonel are known for directing their

subordinates to use excessive force on inmates and ignore their grievances. (Doc. 143 at 5-6.) He also points out that Defendants Adams, Moore and Johnson do not refute Plaintiff's claim that they retaliated against him. (Doc. 143 at 6.)

Plaintiff avers that Defendants refused to let him attend his disciplinary hearing and told him that if he attended the disciplinary hearing, he would receive a disciplinary infraction and they would "do the things they did before to him." (Doc. 143 at 11.) He further claims that Defendants Adams, Moore, and Hadley prevented him from going to the psychiatric cell. (Doc. 143 at 8.)

Plaintiff has submitted declarations from several inmates, including himself, alleging excessive use of force by various guards at Washington C.I., Lake Butler R.M.C., N.W.F.R.C., and Apalachee C.I. None of the declarations address the particular incident detailed in Plaintiff's Complaint.

### III.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988.) As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is

successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987.) The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005.)

In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgement stage." *Beard v. Banks,* 548 U.S. 521, 530 (2006). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001.)

## IV. DISCUSSION

A.  **Eighth Amendment Claim**

Plaintiff alleges a claim against Sergeant Cass and Captain Silcox for violating his Eighth Amendment rights by using chemical agents on him for no apparent reason. He also alleges that Warden Culpepper and Assistant Warden Barfield encourage officers at Apalachee CI to use excessive force on inmates.

The Eighth Amendment states that no cruel and unusual punishments are to be

inflicted.  U.S. Const. Amend. VIII.  In a prison setting, force is deemed legitimate under the Eighth Amendment as long as it is used "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm."  *Whitley v. Albers,* 475 U.S. 312, 320-21 (1986.)  A variety of factors are considered in determining whether the force was applied maliciously or sadistically, including the extent of injury, the need for force, the relationship between that need and the amount of force used, the threat reasonably perceived by the prison officials applying it, and any efforts made to temper the severity of the force used.  *Hudson v. McMillian,* 503 U.S. 1 (1992).   A *de minimis* use of force, as evidenced by *no* injury, typically cannot support a claim of excessive use of force.  *Id.* at 7-8.

   The use of chemical agents on disruptive prisoners is not *per se* unconstitutional. *Danley v. Allen,* 540 F.3d 1298, 1307 (11th Cir. 2008) (*overruled on other grounds*) ("Pepper spray is an accepted non-lethal means of controlling unruly inmates[,]. . .[and a] short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders")*; Soto v. Dickey,* 744 F. 2d 1260, 1270 (7th Cir. 1984) ("The Supreme Court has never held, nor have we or any other court of appeals, so far as we can determine, that the use of tear gas or a chemical agent is a per se violation of the Eighth Amendment . . ."); *Spain v. Procunier,* 600 F.2d 189, 196 (9th Cir. 1979) ("use of nondangerous quantities of [tear gas] in order to prevent a perceived future danger does not violate 'evolving standards of decency' or constitute an 'unnecessary and wanton infliction of pain.'")  However, when chemical agents are used unnecessarily, without penological justification, or for the purpose of punishing or

harming an inmate, the use is unconstitutional. *See Danley,* 540 F.3d at 1311 (holding that prolonged exposure to pepper spray due to a failure to properly decontaminate an inmate may form the basis of an Eighth Amendment claim); *Iko v. Shreve,* 535 F.3d 225, 239 (4th Cir. 2008) (use of additional bursts of pepper spray after inmate attempted to comply sufficiently alleged Eighth Amendment claim.)

The first issue with regard to Plaintiff's Eighth Amendment claim centers around whether or not there was a penological justification for the use of chemical agents on Plaintiff. Plaintiff claims that Defendants pepper sprayed him for "no reason," and supports this claim with declarations from other inmates alleging that they were also subjected to chemical agents for no apparent reason. Defendants counter that the use of chemical agents was due to Plaintiff's disruptive behavior, including shouting profanities, beating on the cell door, and attempting to incite other inmates.

The Court has reviewed all of the summary judgment evidence submitted by the parties and determines that there is no genuine dispute as to whether a penological reason existed for the use of force. Defendants Cass, Silcox, and Deese swore under oath as to Plaintiff's disruptive behavior, which included shouting profanities, tearing his blanket, and attempting to incite other inmates to disruptive behavior. (Doc. 129-2 at 1-3, Doc. 129-3 at 1-3, Doc. 129-5 at 1-4.) The warden's summary and authorization for use of force, signed by Defendants Culpepper and Barfield, notes Plaintiff's disruptive behavior as the reason for use of force. (Doc. 129-4 at 1-4.) Furthermore, the charging disciplinary report references Plaintiff's destruction of his blanket. (Doc. 129-8 at 1-2.)

Plaintiff's only support for his claim is his own allegations in his Complaint that he was pepper sprayed for "no reason." Although he submits a declaration in his response, his declaration concerns fear for his life while incarcerated at Washington CI due to the filing of the instant lawsuit - it does not address the 2012 pepper spraying incident. (Doc. 143-1 at 4.) Plaintiff has submitted declarations from other inmates to bolster his claim; however, none of the declarations address Plaintiff's 2012 pepper spraying incident, but instead claim that the declarant was subjected to excessive use of force without a penological reason. (Docs. 143-1 at 5-12.) As Defendants have pointed out, this case concerns a single incident of pepper spraying on Plaintiff, and not generalized excessive force against inmates within the Florida Department of Corrections. Thus, these declarations are inconsistent with Fed. R. Civ. P. 56(e), which requires that affidavits in support or opposition to a motion for summary judgment be made on personal knowledge and set forth such facts as would be admissible in evidence, and Plaintiff may not use them to create a genuine dispute as to material facts.

The overwhelming evidence, including sworn statements by three DOC employees, the authorization for use of force, and the written disciplinary report, demonstrates that Plaintiff's disruptive behavior was the reason for use of force. A permissible use of force by prison guards is to restore order within a prison. *See Whitley*, 475 U.S. at 320-21; *Fischer v. Ellegood*, 238 F. App'x 428, 431 (11th Cir. 2007). Accordingly, there is no evidence that use of force was for "no reason," as Plaintiff claims, but rather the evidence demonstrates that the use of pepper spray was

to stop Plaintiff's disruptive behavior.

The next issue is whether the force used was excessive in relation to the need for force. The Eleventh Circuit addressed this issue in *Danley*, finding that a "short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders." *Danley*, 540 F.3d at 1307. The exact same situation presents itself here - the burst of pepper spray was intended to control Plaintiff, who was exhibiting disruptive behavior and inciting other inmates to do the same. Thus, there is no violation as to the amount of force used in relation to the need for force.

Finally, the Court must consider whether Plaintiff's exposure to the pepper spray caused injury that violates the Eighth Amendment. Plaintiff states in his Complaint that after being pepper sprayed, he was placed back into the same cell where the officers dispensed the chemical agents. He also contends that he told Nurse McDowell after the use of force that his ankle was hurting and "his eyes, and [he] can't breath[e] sometimes."

The declarations of Defendants Cass, Silcox, and Deese evidence that Plaintiff was decontaminated with a cool shower and taken to medical after the administration of chemical agents. (Doc. 129-2 at 1-3, Doc. 129-3 at 1-3, Doc. 129-5 at 1-4.) Their statements aver that Plaintiff was placed into a different cell after the use of chemical agents. *Id.* The incident report confirms Defendants' statements. (Doc. 129-2 at 4-6.)

Plaintiff's medical records show that after the incident, his respiration was even and unlabored and his heart rate was regular. (Doc. 129-7 at 2.) Plaintiff complained of pain in the left side of his chest, but the nurse found that his breath was clear and

vital signs were stable, and there was no need for follow up.  *Id.*  She found no signs or symptoms of distress or injuries.  *Id.*  Plaintiff's sole support for his claim of injury is his own conclusional assertions, which are refuted by the medical record.  Thus, there is no genuine dispute that the use of force on Plaintiff was *de minimis* and does not support a violation of the Eighth Amendment.

Accordingly, for the reasons discussed above, the Court concludes that there is no genuine dispute of material fact that precludes the entry of summary judgment on Plaintiff's Eighth Amendment claim.  Therefore, the undersigned recommends that Defendants' motion for summary judgment be granted with respect to this claim.

### B.   First Amendment Retaliation Claim

Plaintiff alleges that Defendants Moore and Adams trashed his cell, played with his food, did not allow him to attend his disciplinary hearing, and retaliated against and harassed him.  Plaintiff also claims that Defendant Johnson told him if he filed any more grievances regarding use of force at Apalachee C.I., he would use chemical agents on Plaintiff and make his life "a living hell."

The Eleventh Circuit has established a three-part test to determine whether Plaintiff has an actionable First Amendment claim.  Plaintiff must establish each of the three elements:

> (1) his speech was constitutionally protected;
>
> (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and
>
> (3) there is a causal relationship between the retaliatory action and the protected speech.

Case No: 5:13-cv-209-WS-GRJ

*Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005); *see also Smith v. Mosley,* 532 F.3d 1270, 1276 (11th Cir. 2008). Plaintiff bears the burden of proof on all three elements.

Applying this three-part *Bennett* test to Plaintiff's claims, the undersigned finds that with respect to his claims against Moore and Adams, he has failed to satisfy the three part test. Plaintiff has failed to allege that the actions taken by Moore and Adams - including trashing his cell, playing with his food, and preventing him from attending his disciplinary hearing - were a result of Plaintiff engaging in protected speech. Protected speech in the prison setting is often filing a grievance or filing a lawsuit. However, Plaintiff merely argues that Moore and Adams retaliated against him - in the absence of protected speech, Plaintiff's First Amendment claim fails.

With respect to Defendant Johnson, however, it is clear that Plaintiff can satisfy the first element, as his speech– filing grievances against prison guards– is constitutionally protected. It "is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." *Mosley,* 532 F.3d at 1276. "It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints." *Id*.

However, it is unnecessary to address the sufficiency of Plaintiff's First Amendment claims against Defendants Moore, Adams and Johnson because Plaintiff has failed to exhaust his administrative remedies with respect to these claims. Under

the Prison Litigation Reform Act (PLRA), inmates must exhaust all available administrative remedies before proceeding in federal court. 42 U.S.C. § 1997e ("[N]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner...until such administrative remedies as available are exhausted."). The exhaustion provision is a mandatory precondition to bringing suit in federal court. *Jones v. Bock*, 549 U.S. 199, 211 (2002). Exhaustion must be completed properly, meaning the inmate must "take each step within the administrative process" and "file complaints and appeals in the place, and at the time, the prison's administrative rules require."[2] *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024-25 (7th Cir. 2002)).

As demonstrated by the grievance logs and the declarations of Shirley Johnson, Alan McManus, and Lori Sodrel, Plaintiff did not exhaust his retaliation and harassment claims. Plaintiff failed to file any grievance about the alleged harassment and retaliation that complied with the Department's grievance procedures.[3] (Doc. 129-11 at 2-11.)

---

[2]The Florida Administrative Code delineates procedures for inmates to file a grievance against their prison or one of its officials. The inmate must first file an informal grievance, with several exceptions, including for medical grievances. Fla. Admin. Code § 33-103.005, § 33-103.006(3)(e). Medical grievances may be brought initially as formal grievances at the institutional level within 15 days of "[t]he date on which the incident or action being grieved occurred." Fla. Admin. Code § 33-103.006, § 33-103.011. If the inmate is dissatisfied with the response to the formal grievance, he may file an administrative appeal to the Office of the Secretary within 15 days of the date of the response to the formal grievance. Fla. Admin. Code § 33-103.007, § 33-103.011(1)(c).

[3]Grievance Log Number 12-6-09961 and 12-6-11967 mention, in vague terms, harassment by staff. (Doc. 129-9 at 18, 20.) The grievances were returned as not in compliance with Department Rules, because they were filed improperly as emergency grievances. (Doc. 129-9 at 17, 19.) When a grievance is in non-compliance with the regulations governing the grievance procedures, it cannot constitute exhaustion. *See Johnson*, 418 F.3d at 1152.

Thus, the merits of Plaintiff's First Amendment and retaliation claims cannot be addressed because these claims are due to be dismissed for failure to exhaust administrative remedies.

### C. Freedom of Access to Care Act ("FACE") Claim

Plaintiff claims that Defendants have violated the Freedom of Access to Care Act, 18 U.S.C. § 248. The Freedom of Access to Care Act guarantees freedom of access to the entrances of reproductive health facilities. A "FACE" Act action may be brought "only by a person involved in providing or seeking to provide, or obtaining or seeking to obtain, services in a facility that provides reproductive health services..." 18 U.S.C. § 248(c)(1)(A).

By Plaintiff's own admission, when Defendants denied him access to the psych ward, he was seeking psychiatric care. Pursuant to the terms of the statute, then, Plaintiff is not permitted to bring a cause of action under the FACE Act because he does not allege that he was seeking services pertaining to reproductive health. Consequently, his claim under the FACE Act must be dismissed.

### D. Due Process Claim

Plaintiff claims that Officers Moore and Adams did not let him attend the disciplinary hearing for destruction of his blanket. Liberally construing Plaintiff's allegations, he argues a deprivation of due process with respect to the disciplinary hearing. The threshold inquiry to determine whether protections of due process apply is whether the plaintiff has established an interest that involves either life, liberty, or property. *Board of Regents v. Roth*, 408 U.S. 564 (1972); *Swarthout v. Cooke*, 131

S.Ct. 859, 851 (2011).

Assuming Plaintiff claims a due process violation, his claim fails because he has not alleged deprivation of an interest that implicates the protections of due process. The disciplinary proceeding did not result in the loss of gain time, but rather disciplinary confinement. (Doc. 129-8 at 1-2.) Mere disciplinary confinement, however, without the loss of gain time does not implicate a liberty interest. *See Sandin v. Connor*, 515 U.S. 472, 486 (1995) (thirty-day placement in disciplinary confinement was not atypical or significant enough to trigger due process protection). Thus, any claim of violation of Plaintiff's due process rights on this basis must fail.

To the extent that Plaintiff claims a property interest in the $5.50 he paid in restitution for the disciplinary proceedings, he still fails to state a claim for violation of due process. "It is well established that negligent or intentional deprivations of property resulting from random, unauthorized acts of government officials do not become due process violations when there exist adequate remedies under state law for Plaintiff to seek redress for the deprivation." *Edler v. Gielow,* 2010 WL 3958014, at *3 (N.D. Fla. 2010) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1984), *overruled on other grounds*, *Daniels v. Williams,* 474 U.S. 327 (1986); *Rodriguez-Mora v. Baker*, 792 F. 2d 1524, 1527 (11th Cir. 1986). To challenge his disciplinary report, Plaintiff could file a Petition for Writ of Mandamus against the Department to challenge the disciplinary report based on his property interest. Accordingly, Plaintiff cannot maintain a § 1983 claim based on the alleged deprivation of his personal property and this claim is due to be dismissed.

*Case No: 5:13-cv-209-WS-GRJ*

**E.     Damages**

Even in the event that Plaintiff had a claim that would survive summary judgment, he is not entitled to the damages he seeks on any of his claims.   Plaintiff requests injunctive relief against Defendants, including that the officials "stop using excessive force on the inmates, covering up the abuses and stop retaliating for reporting the issues of abuses."  He also asks to "not be around" any of the Defendants.

Plaintiff is currently incarcerated at Martin CI, rather than Apalachee CI, where the incident occurred.[4]  Transfer to a different correctional institution moots an inmate's claim for declaratory and injunctive relief in a § 1983 action.  *McKinnon v. Talladega County, Ala*., 745 F.2d 1360, 1363 (11th Cir. 1984).  Thus, his claims for injunctive relief against Apalachee C.I. officials are moot because he is no longer incarcerated at Apalachee C.I.

Plaintiff's claims for compensatory and punitive damages are similarly untenable. The PLRA provides that a prisoner may not bring a federal civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997(e); *Smith v. Allen*  502 F.3d 1255, 1271 (11th Cir. 2007) (citing *Napier v. Preslicka*, 314 F.3d 528, 532 (11th Cir.2002)).  Although Plaintiff alleges injury as a result of the use of force, the summary judgment evidence reveals that any injury suffered by Plaintiff was only *de minimis*, which does not support a claim for

---

[4]The Florida Department of Corrections Inmate Locator evidences that Plaintiff is currently incarcerated at Martin C.I.:
http://www.dc.state.fl.us/activeinmates/detail.asp?Bookmark=1&From=list&SessionID=490536273.

compensatory or punitive damages.  See *Dixon v. Toole*, 225 F. App'x 797, 799 (11th Cir. 2007).   Accordingly, Plaintiff's claims for monetary and injunctive relief must be dismissed.[5]

## V.  CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

Defendants' Motion for Summary Judgment (Doc. 116) should be **GRANTED** and judgment should be entered in favor of Defendants.

**IN CHAMBERS**, at Gainesville, Florida, this 7th day of July 2015.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. Rule 3-1; 28 U.S.C. § 636**.

---

[5]If Plaintiff had shown a violation of a constitutional right, nominal damages would have remained available as to both Plaintiff's First and Eighth Amendment claims.  See *Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003)("Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages."); *Williams v. Brown*, 347 F. App'x 429 (11th Cir. 2009)(remanding case back to district court to consider whether Williams's *pro se* complaint should be liberally construed to request nominal damages, considering that Williams requested both monetary and injunctive relief).  However, entry of summary judgment is warranted on Plaintiff's First and Eighth Amendment claims because he has failed to show the violation of a constitutional right.

*Case No: 5:13-cv-209-WS-GRJ*